## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| JOSHUA CACHO, a Florida resident, | § § § |
| **Plaintiff,** | § § § |
| v. | § § |
| LAW OFFICES OF RICHARD H. WEISBERG, P.A., a Florida Profit Corporation, and 1ST NATIONAL LENDER LLC, a Florida Limited Liability Company, | § § § § § |
| **Defendants.** | § § § § |

**FILED**

CLERK, US DISTRICT COURT
MIDDLE DISTRICT FLORIDA
ORLANDO, FL

2023 JUN 14 PM 3: 52

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1.  Plaintiff JOSHUA CACHO ("Plaintiff") is a natural person, resident of the Middle District of Florida, and was present in Florida for all calls, in this case in Seminole County, Florida.

2.  Defendant LAW OFFICES OF RICHARD H. WEISBERG, P.A., ("WEISBERG") is a Florida Profit Corporation organized and existing under the laws of Florida with its principal address at 520 West Lake Mary Blvd. Suite 103, Sanford, Florida 32773, United States, and can be served via registered agent and President Richard H. Weisberg at 520 West Lake Mary Blvd. Suite 103 Sanford, Florida 32773, United States.

3.  Defendant 1ST NATIONAL LENDER LLC ("NATIONAL") a Limited Liability Company organized and existing under the laws of Florida with its principal address at 51 E

Jefferson St Olando, Florida 32802, United States, and can be served via registered agent and Officer David A Edwards at 51 E Jefferson St Olando, Florida 32802, United States.

4.      WEISBERG and NATIONAL will hereinafter be collectively known as ("Defendants").

## JURISDICTION AND VENUE

5.      Jurisdiction.  This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

## PERSONAL JURISDICTION

6.      This Court has general personal jurisdiction over Defendants WEISBERG and NATIONAL as they are both Florida corporations.

7.      This Court has supplemental subject matter jurisdiction over Plaintiff's claims arising under Florida Statutes § 501.059 and § 501.601 because the claims arise from the same nucleus of operative fact, i.e., Defendants' unauthorized automated robocalls to Plaintiff, and adds little complexity to the case.

## VENUE

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the automated robocalls and sale of goods and services directed at Florida residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District.

9.      This Court has venue over Defendants WEISBERG and NATIONAL because the automated robocalls at issue were sent by or on behalf of the above-named Defendants to Plaintiff, a Florida resident.

## THE TELEPHONE CONSUMER PROTECTION ACT

### OF 1991, 47 U.S.C. § 227

10.     In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

11.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

12.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

13.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

14.     Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

15.     The TCPA provides a private cause of action to persons who receive calls in violation of 227(c) or a regulation promulgated there under. 47 U.S.C. § 227(c)(5).

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

16.    According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

17.    The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

18.    The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

19.    *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

20.    The FCC confirmed this principle in 2013, when it explained that "a seller ... may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter*

*of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

21.     Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

22.     The TCPA defines an ATDS as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential umber generator; and (B) to dial such numbers. *Id.* at § 227(a)(1)

23.     As to what type of dialing equipment constitutes an ATDS, the TCPA vests to the Federal Communication Commission ("FCC") the responsibility to promulgate regulations implementing the TCPA's requirements. *Id.* at § 227(a)(1).

24.     Over the last nineteen years, the FCC has repeatedly recognized that a predictive dialer is an ATDS that is subject to regulation by the TCPA. In its 2003 Order, the FCC also defined a "predictive dialer" holding:

[A] predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers. As commenters point out, in most cases, telemarketers program the numbers to be called into the equipment, and the dialer calls them at a rate to ensure that when a consumer answers the phone, a sales person is available to take the call.[1]

25.     In 2008, the FCC affirmed "that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers."[2]

26.     A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g., Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist.

LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate

actors can be individually liable for violating the TCPA where they had direct, personal

participation in or personally authorized the conduct found to have violated the statute." (internal

quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D.

Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability,

the TCPA would lose much of its force.").


## FLORIDA STATUTES § 501.059

27.    Florida Statutes § 501.059 makes it a violation to "make or knowingly allow a telephone

sales call to be made if such call involves an automated system for the selection or dialing of

telephone numbers or the playing of a recorded message when a connection to a number called

without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

28.    A "telephone sales call" is defined as a 'telephone call, text message, voicemail

transmission to a consumer for the purpose of soliciting a sale of any consumer goods or

services, soliciting an extension of credit for consumer goods or services, or obtaining

information that will or may be used for the direct solicitation of a sale of consumer goods or

services or an extension of credit for such purposes." Fla. Stat. § 501.059(j).

29.    "Prior express written consent" means an agreement in writing that: Fla. Stat. §

501.0059(g).

    1. Bears the signature of the called party;

    2. Clearly authorizes the person making or allowing the placement of a telephonic sales

       calls by telephone call, text message, or voicemail transmission to deliver or cause to

       be delivered to the called party a telephone sales call using an automated system for

the selection or dialing of telephone numbers, the playing of a recorded message when a connection is completed to a number called, or the transmission of a prerecorded voicemail;

3. Includes the telephone number to which the signatory authorizes a telephonic sales call to be delivered; and

4. Includes a clear and conspicuous disclosure informing the called party that;

    a. By executing the agreement, the called party authorizes the person making or allowing the placement of a telephonic sales call to deliver or cause to be delivered a telephonic sales call to the called party using an automated system for the selection or dialing of telephone numbers or playing of a recorded message when a connection is completed to a number called; and

    b. He or she is not required to directly or indirectly sign the written agreement or to agree to enter into such agreement as a condition of purchasing any property, goods, or services.

30.     A person aggrieved by a violation of this section may bring an action to recover actual damages or $500, whichever is greater. Fla. Stat. § 501.059(10)(a)(2).

31.     If the court finds that the Defendants willfully or knowingly violated this section or rules adopted pursuant to this section, the court may, in its discretion, increase the amount of the award to an amount equal to not more than three times the amount available under paragraph (a). Fla. Stat. § 501.059(10)(a)(2)(b).

## FLORIDA TELEMARKETING ACT

32.     A commercial telephone seller or salesperson making a commercial telephone solicitation

call may not use technology that deliberately displays a different caller identification number than the number the call is originating from to conceal the true identity of the caller. Fla. Stat. § 501.616(7)(b).

33.     A commercial telephone seller or salesperson may not transmit more than three commercial telephone solicitation phone calls from any number to a person over a 24-hour period on the same subject matter or issue, regardless of the phone number used to make the call. Fla. Stat. § 501.616(6)(b).

34.     In addition to any other penalties or remedies provided under law, a person who is injured by a violation of the provisions of this part may bring a civil action for recovery of actual damages and/or punitive damages, including costs, court costs, and attorney's fees. No provision of this part shall be construed to limit any right or remedy provided under law. Fla. Stat. § 501.625.

## FACTUAL ALLEGATIONS

35.     Plaintiff's personal cell phone ending in 3822 has been registered on the National Do-Not-Call Registry for more than thirty-one (31) days prior to the first automated robocall was received from Defendants WEISBERG and NATIONAL.

36.     Plaintiff personally registered the cell phone at issue in this case on the National-Do-Not-Call Registry on September 11, 2022.

37.     Plaintiff never asked the National Do-Not-Call Registry administrator to remove him from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry for the majority of time relevant to this Complaint.

38.     Defendants WEISBERG and NATIONAL collectively operate as a debt elimination scam company.

39.     As an attorney, Defendant WEISBERG is barred by ethics from directly placing unsolicited phone calls on its own behalf, though WEISBERG and NATIONAL continue to violate the laws with knowledge because doing so benefits them both financially.

40.     Both Defendants are aware of the requirements of the TCPA and FTSA and the National Do Not Call registry, however, continue to willfully ignore these requirements.

41.     Defendants WEISBERG and NATIONAL sent prerecorded robocalls to Plaintiff repeatedly that stated,

**"Hello, this is Jacob from Visa and Mastercard department. Visa and Mastercard have made some big changes on your credit card accounts, you're now qualified for a complete debt elimination on all of your credit cards. This is a limited-time offer, to get yourself enrolled, please press one to speak to a live representative." ("Jacob – Visa and Mastercard Dept")**

42.     Plaintiff received a total of forty-three (43) robocalls with the same prerecorded message, and eleven (11) direct unauthorized follow-up calls soliciting debt elimination services on behalf of Defendants WEISBERG and NATIONAL.

43.     The prerecorded message does not identify either the Defendants WEISBERG or NATIONAL.

44.     The prerecorded message does not ask for Plaintiff directly.

45.     Plaintiff has been bombarded and harassed by telemarketers calling his personal cell phone 3822 with prerecorded voice messages soliciting debt elimination services on behalf of defendants WEISBERG and NATIONAL for almost an entire year.

46.     With information and belief Plaintiff has received more calls from telemarketers calling on behalf of Defendants WEISBERG and NATIONAL within the past two years that are unknown to Plaintiff at this time but will be revealed during discovery.

47.     **Call #1,** *See Table A,* On August 5, 2022, at 12:41 PM, Plaintiff received a call from 407-

565-1734. Plaintiff answered the phone and said "hello", Plaintiff was greeted by a prerecorded message from "Jacob – Visa and Mastercard Dept", *See Paragraph 41*.

**48.**    Plaintiff listened to the message and pressed 1, as soon as the representative answered the line, Plaintiff loudly stated "I am on the Do Not Call list, do not ever call me with this again!"), and disconnected the line.

**49.**    **Calls # 2-4,** *See Table A*, Plaintiff received the same message "Jacob – Visa and Mastercard Dept", and stated for them to not call him again as he was on the Do Not Call list, and hung up both times afterward.

**50.**    **Call #5,** *See Table A*, on August 15, 2022, at 6:55 PM, Plaintiff received a call from 407-254-8388. Plaintiff answered the phone and said "hello", Plaintiff was greeted by a prerecorded message from "Jacob – Visa and Mastercard Dept", *See Paragraph 41*. For the sole purpose of Identifying the party(s) responsible for calling, Plaintiff pressed 1, and decided to play along.

**51.**    Plaintiff was transferred to a representative by the name of "Michael." After asking Plaintiff a bunch of questions and explaining the process, Plaintiff was informed that they would have to charge him $3,500 before receiving any paperwork or an email confirming the information.

**52.**    Plaintiff would not allow this and so told Michael he wasn't interested and disconnected the line.

**53.**    **Call # 6,** *See Table A,* on August 22, 2022, at 2:55 PM, Plaintiff received a call from 407-565-3630. Plaintiff answered the phone and said "hello", Plaintiff was greeted by a prerecorded message from "Jacob – Visa and Mastercard Dept", *See Paragraph 41*. For the sole purpose of Identifying the party(s) responsible for calling, Plaintiff pressed 1, and decided to play along.

**54.**    Plaintiff was transferred and greeted by a telemarketer by the name of Steven.  After

asking Plaintiff a bunch of questions and explaining the process, Plaintiff was informed that They would have to charge him $4,650 before receiving any paperwork or an email confirming the information.

55.     Once again, Plaintiff would not allow this and so told Steven he wasn't interested and disconnected the line.

56.     Call #7, See Table A, on August 24, 2022, at 1:33 PM, Plaintiff received a call from 407-304-7475. Plaintiff answered the phone and said "hello", Plaintiff was greeted by a prerecorded message from "Jacob – Visa and Mastercard Dept", *See Paragraph 41*. For the sole purpose of Identifying the party(s) responsible for calling, Plaintiff pressed 1, and decided to play along.

57.     Plaintiff went through the same process and result as **calls #5-6,** *See Paragraphs 51-56.* The difference is he spoke with Alex, and the charge was going to be $3,300.00.

58.     Plaintiff was extremely frustrated because he realized the only way he would learn the responsible party(s) for the calls he was receiving soliciting debt elimination services was if he allowed them to charge him "blindly" without any information connecting the company responsible.

59.     **Calls # 8-37,** *See Table A,* Plaintiff answered the phone each time, said hello and after hearing part of the "Jacob – Visa and Mastercard Dept" prerecorded message he hung up as he believed he would not be able to get them to stop calling him, nor identify the party(s) responsible.

60.     **Call # 38,** *See Table A,* On May 16, 2023, at 5:48 PM, Plaintiff received a call from 229-447-5027. Plaintiff answered the phone and said "hello", Plaintiff was greeted by a prerecorded message from "Jacob – Visa and Mastercard Dept", *See Paragraph 41,* Plaintiff decided to try again at identifying the party(s) responsible for calling him soliciting debt elimination services

for close to a year at this point, so he decided to play along.

61.     Plaintiff was transferred to David Brown, who asked a bunch of questions and explained the process, and informed Plaintiff he needed to pay at least $2,500.00 to his credit card in order to qualify for the "services", he provided Plaintiff with his toll-free number of 866-985-0018, then disconnected the call on Plaintiff.

62.     **Call # 39**, *See Table A*, on May 17, 2023, at 6:45 PM, Plaintiff received a call from 934-333-1352. Plaintiff answered the phone and said "hello", Plaintiff was greeted by a prerecorded message from "Jacob – Visa and Mastercard Dept", *See Paragraph 42*. For the sole purpose of Identifying the party(s) responsible for calling, Plaintiff pressed 1, and decided to play along.

63.     Plaintiff was connected to Defendants' telemarketer by the name of Derrick. Derrick explained the process once again and asked Plaintiff a bunch of questions, and in the middle of an answer Plaintiff was providing, the call dropped.

64.     **Call # 40**, *See Table A*, on May 17, 2023, at 7:07 PM, Plaintiff received a call from 866-985-0018. Derrick called Plaintiff back and informed Plaintiff the services would cost $13,000.00, Plaintiff hung up the phone after hearing this.

65.     **Call # 41**, *See Table A*, on May 17, 2023, at 7:15 PM Plaintiff received a call from 866-985-0018. Derrick called back and said if Plaintiff didn't include all of his credit cards but instead only included $5,000.00 worth of debt and the charge would only be $2,500.00. Plaintiff negotiated the amount down to $2,000.00 but would not allow this charge without any paperwork or email confirming the details and company information. Plaintiff was hung up on after stating this to Defendants' telemarketer Derrick.

66.     **Call # 42**, *See Table A*, on May 18, 2023, at 4:49 PM, Plaintiff received a call from 866-985-0018. After answering the phone with "hello" Plaintiff was greeted by David from **Call #**

**38,** *See table A, See Paragraphs 61-62.* David asked if Plaintiff had paid his credit card yet and Plaintiff responded he was busy and to not call back.

67.    **Call # 43,** *See Table A*, on May 18, 2023, at 5:08 PM, Plaintiff received a call from 866-985-0018. After answering the phone with "hello" Plaintiff was greeted by David from **Call # 38,** *See table A, See Paragraphs 61-62.*

68.    David informed Plaintiff that he had learned he paid his credit card and wanted to get approved for the debt elimination service. Defendants' telemarketer David wanted to charge Plaintiff $2,500.00 for the services but once again would under no circumstances provide any paperwork or email providing any details until Plaintiff allowed David's company to charge his credit card. He then said he would personally send all the paperwork directly to Plaintiff's residence via certified mail, after the charge was approved.

69.    Plaintiff would not allow this once again so he said he wasn't interested and to not call him back.

70.    **Calls # 44-46,** See Table A, Plaintiff was called from 866-985-0018. After answering Plaintiff was greeted each time by David from **Call # 38,** *See table A, See Paragraphs 61-62.*

71.    Each time David was soliciting debt elimination services on behalf of Defendants WEISBERG and NATIONAL and was trying to convince Plaintiff to allow his company to charge him directly before providing paperwork, and no emails before or after.

72.    **Calls # 47-49,** See Table A, Plaintiff answered the phone each time, said hello and after hearing part of the "Jacob – Visa and Mastercard Dept" prerecorded message he hung up as he believed he would not be able to get them to stop calling him, nor identify the party(s) responsible.

73.    **Call # 50,** *See Table A*, on May 30, 2023, at 6:24 PM, Plaintiff received a call from 530-

451-2747. Plaintiff answered the phone and said "hello", Plaintiff was greeted by a prerecorded message from "Jacob – Visa and Mastercard Dept", *See Paragraph 41*. For the sole purpose of Identifying the party(s) responsible for calling, Plaintiff pressed 1, and yet again decided to play along.

74.     Plaintiff was connected this to Brian who informed Plaintiff he needed the physical card in order to qualify for the debt elimination services, he ended the call by providing his toll-free number of 866-985-0018, (which is the same number provided by David from **calls # 38**, *See Table A, See Paragraph 61-62*), and then disconnected the call on Plaintiff.

75.     **Call # 51**, *See Table A*, on May 30, 2023, at 6:54 PM, Plaintiff received a call from 929-758-9124. After saying hello Plaintiff was greeted by Chris Morris who stated he was Brian's supervisor, provided his number of 866-985-0018, and stated to call him directly if Plaintiff found his card.

76.     **Call # 52**, *See Table A*, on June 2, 2023, at 5:03 PM, Plaintiff received a call from 866-985-0018. After stating hello Plaintiff was greeted by Chris Morris from the previous call. Plaintiff informed Chris he had found his card, but because Plaintiff didn't have at least $1,650 for them to charge his card, Chris said they couldn't move forward.

77.     **Call # 53**, *See Table A*, on June 2, 2023, at 5:46 PM, Plaintiff received a call from 866-985-0018. After stating hello Plaintiff was greeted by Chris Morris from the previous call. Chris had discovered that Plaintiff had made a payment to his card and said they would send email documents immediately after the charge of $1,650.00 was approved along with paperwork in the mail. Plaintiff decided to allow them to charge and if nothing was received through email he would cancel immediately.

78.     Plaintiff had still at no point received the true identity of the party(s) responsible for all

these calls.

79.     **Call # 54**, *See Table A*, on June 2, 2023, at 6:44 PM, Plaintiff received a call from 866-

985-0018. After stating hello, Plaintiff was greeted again by Chris Morris from a previous call.

Chris said they had to charge $2,500, instead of $1,650. Plaintiff stated $1,650.00 is the

maximum amount he would allow them to charge.

80.     Chris Morris agreed again to the amount and finally informed him of employment

through Defendant WEISBERG.

81.     Chris informed Plaintiff his company would then charge him in the amount of $1,650

"today". Shortly after, Plaintiff received an alert on his credit card statement showing "Law

Office of Richard H. W" as the merchant responsible for the charge.

82.     On June 2, 2023, at 7:57 PM, Plaintiff received an email from Defendants' WEISBERG

and NATIONAL. The email was a DocuSign agreement for the charge of $1,650.00 for

"Services rendered".

83.     Attached to the email was the phone number of 833-406-4440, and the DocuSign

authorization form showing both Defendants WEISBERG and NATIONAL as the parties

responsible for all the calls described in this Complaint. *See Exhibit A.*

84.     On June 6, 2023, Plaintiff received another email from Defendants confirming the

approval of the charge for their services. *See Exhibit B.*

85.     Table A below displays the calls received from Defendants WEISBERG and

       NATIONAL.

       **Table A**

| NO. | Date | Time | Caller ID | Notes |
|-----|------|------|-----------|-------|
| 1 | Aug 05, 2022 | 12:41 PM | (407) 565-1734 | prerecorded automated call - "Jacob |

| NO. | Date | Time | Caller ID | Notes |
|---|---|---|---|---|
| | | | | - Visa and Mastercard Dept" |
| 2 | Aug 08, 2022 | 2:05 PM | (407) 800-8543 | prerecorded automated call - "Jacob - Visa and Mastercard Dept" |
| 3 | Aug 12, 2022 | 1:10 PM | (386) 340-3125 | prerecorded automated call - "Jacob - Visa and Mastercard Dept" |
| 4 | Aug 15, 2022 | 5:11 PM | (407) 644-2405 | prerecorded automated call - "Jacob - Visa and Mastercard Dept" |
| 5 | Aug 15, 2022 | 6:55 PM | (407) 254-8388 | prerecorded automated call - "Jacob - Visa and Mastercard Dept" |
| 6 | Aug 22, 2022 | 2:54 PM | (407) 565-3630 | prerecorded automated call - "Jacob - Visa and Mastercard Dept" |
| 7 | Aug 24, 2022 | 1:33 PM | (407) 304-7475 | prerecorded automated call - "Jacob - Visa and Mastercard Dept" |
| 8 | Sep 21, 2022 | 6:50 PM | (407) 577-6013 | prerecorded automated call - "Jacob - Visa and Mastercard Dept" |
| 9 | Sep 22, 2022 | 2:07 PM | (407) 507-5725 | prerecorded automated call - "Jacob - Visa and Mastercard Dept" |
| 10 | Sep 22, 2022 | 3:46 PM | (407) 778-0512 | prerecorded automated call - "Jacob - Visa and Mastercard Dept" |
| 11 | Sep 23, 2022 | 5:23 PM | (407) 610-0245 | prerecorded automated call - "Jacob - Visa and Mastercard Dept" |
| 12 | Sep 27, 2022 | 2:19 PM | (407) 380-6856 | prerecorded automated call - "Jacob - Visa and Mastercard Dept" |
| 13 | Sep 28, 2022 | 5:17 PM | (407) 560-0374 | prerecorded automated call - "Jacob - Visa and Mastercard Dept" |
| 14 | Sep 28, 2022 | 5:17 PM | (407) 560-0374 | prerecorded automated call - "Jacob - Visa and Mastercard Dept" |
| 15 | Oct 05, 2022 | 7:16 PM | (361) 240-0152 | prerecorded automated call - "Jacob - Visa and Mastercard Dept" |

| NO. | Date | Time | Caller ID | Notes |
|-----|------|------|-----------|-------|
| 16 | Oct 07, 2022 | 5:58 PM | (309) 376-8839 | prerecorded automated call - "Jacob - Visa and Mastercard Dept" |
| 17 | Oct 18, 2022 | 4:15 PM | (737) 946-1644 | prerecorded automated call - "Jacob - Visa and Mastercard Dept" |
| 18 | Oct 21, 2022 | 5:30 PM | (707) 855-0963 | prerecorded automated call - "Jacob - Visa and Mastercard Dept" |
| 19 | Oct 26, 2022 | 2:47 PM | (719) 435-2218 | prerecorded automated call - "Jacob - Visa and Mastercard Dept" |
| 20 | Nov 08, 2022 | 6:40 PM | (330) 787-8008 | prerecorded automated call - "Jacob - Visa and Mastercard Dept" |
| 21 | Nov 09, 2022 | 4:44 PM | (725) 433-5628 | prerecorded automated call - "Jacob - Visa and Mastercard Dept" |
| 22 | Nov 09, 2022 | 5:00 PM | (727) 303-3422 | prerecorded automated call - "Jacob - Visa and Mastercard Dept" |
| 23 | Nov 16, 2022 | 5:10 PM | (838) 800-7664 | prerecorded automated call - "Jacob - Visa and Mastercard Dept" |
| 24 | Nov 17, 2022 | 6:35 PM | (425) 793-2712 | prerecorded automated call - "Jacob - Visa and Mastercard Dept" |
| 25 | Nov 21, 2022 | 4:45 PM | (407) 409-9801 | prerecorded automated call - "Jacob - Visa and Mastercard Dept" |
| 26 | Nov 21, 2022 | 5:30 PM | (407) 720-2248 | prerecorded automated call - "Jacob - Visa and Mastercard Dept" |
| 27 | Nov 28, 2022 | 5:16 PM | (954) 617-3524 | prerecorded automated call - "Jacob - Visa and Mastercard Dept" |
| 28 | Nov 29, 2022 | 4:04 PM | (754) 500-3480 | prerecorded automated call - "Jacob - Visa and Mastercard Dept" |
| 29 | Mar 29, 2023 | 6:24 PM | (484) 647-1407 | prerecorded automated call - "Jacob - Visa and Mastercard Dept" |

| NO. | Date | Time | Caller ID | Notes |
|---|---|---|---|---|
| 31 | Apr 11, 2023 | 5:16 PM | (520) 376-5302 | prerecorded automated call - "Jacob - Visa and Mastercard Dept" |
| 32 | Apr 14, 2023 | 5:19 PM | (407) 571-0574 | prerecorded automated call - "Jacob - Visa and Mastercard Dept" |
| 33 | Apr 14, 2023 | 5:41 PM | (934) 414-5136 | prerecorded automated call - "Jacob - Visa and Mastercard Dept" |
| 34 | Apr 20, 2023 | 5:51 PM | (484) 449-8648 | prerecorded automated call - "Jacob - Visa and Mastercard Dept" |
| 35 | Apr 25, 2023 | 10:15 AM | (231) 385-3416 | prerecorded automated call - "Jacob - Visa and Mastercard Dept" |
| 36 | Apr 25, 2023 | 10:15 AM | (231) 385-3416 | prerecorded automated call - "Jacob - Visa and Mastercard Dept" |
| 37 | Apr 25, 2023 | 3:39 PM | (484) 500-3169 | prerecorded automated call - "Jacob - Visa and Mastercard Dept" |
| 38 | May 16, 2023 | 5:48 PM | (229) 447-5027 | prerecorded automated call - "Jacob - Visa and Mastercard Dept" |
| 39 | May 17, 2023 | 6:45 PM | (934) 333-1352 | prerecorded automated call - "Jacob - Visa and Mastercard Dept" |
| 40 | May 17, 2023 | 7:07 PM | (866) 985-0018 | unauthorized direct call |
| 41 | May 17, 2023 | 7:15 PM | (866) 985-0018 | unauthorized direct call |
| 42 | May 18, 2023 | 4:49 PM | (866) 985-0018 | unauthorized direct call |
| 43 | May 18, 2023 | 5:08 PM | (866) 985-0018 | unauthorized direct call |
| 44 | May 22, 2023 | 2:16 PM | (866) 985-0018 | unauthorized direct call |
| 45 | May 22, 2023 | 4:49 PM | (866) 985-0018 | unauthorized direct call |
| 46 | May 23, 2023 | 5:40 PM | (866) 985-0018 | unauthorized direct call |
| 48 | May 26, 2023 | 5:22 PM | (407) 550-8893 | prerecorded automated call - "Jacob - Visa and Mastercard Dept" |

| NO. | Date | Time | Caller ID | Notes |
|-----|------|------|-----------|-------|
| 49 | May 30, 2023 | 4:12 PM | (352) 645-8480 | prerecorded automated call - "Jacob - Visa and Mastercard Dept" |
| 50 | May 30, 2023 | 6:24 PM | (530) 451-2747 | prerecorded automated call - "Jacob - Visa and Mastercard Dept" |
| 51 | May 30, 2023 | 6:54 PM | (929) 758-9124 | unauthorized direct call |
| 52 | Jun 02, 2023 | 5:03 PM | (866) 985-0018 | unauthorized direct call |
| 53 | Jun 02, 2023 | 5:46 PM | (866) 985-0018 | unauthorized direct call |
| 54 | Jun 02, 2023 | 6:44 PM | (866) 985-0018 | unauthorized direct call |

86.    Plaintiff did not have an established business relationship with Defendants, nor did Plaintiff consent to any of the automated prerecorded robocalls or direct calls sent to his cell phone.

87.    Plaintiff did not provide his phone number to Defendants at any point.

88.    On June 7, 2023, Plaintiff sent an internal Do-Not-Call policy request to Defendants WEISBERG and NATIONAL to email cs001@letsgetequity.com which is an email provided by Defendant WEISBERG and NATIONAL in an email they sent to Plaintiff.

89.    Despite this request for their internal DNC policies, Defendants WEISBERG and NATIONAL failed and/or refused to send Plaintiff a Do- Not-Call policy request.

90.    Upon information and belief, Defendants WEISBERG and NATIONAL did not have a written do-not-call policy while they were sending Plaintiff the calls.

91.    Upon information and belief, Defendants WEISBERG and NATIONAL did not train their employees who engaged in telemarketing on the existence and use of any do-not-call list.

92.    Such conduct violates the TCPA and its implementing regulations, 47 CFR

§ 64.1200(d)(3) (requiring telemarketers to honor and record DNC requests when made).

93.     Defendants knew or should have known that its conduct would violate the TCPA and its regulations because WEISBERG and NATIONAL operate in a highly regulated telephone solicitation industry.

94.     Defendants knew or should have known the requirements for making TCPA-compliant telemarketing calls and thus knew or should have known that the automated prerecorded messages complained of herein violated the TCPA and its regulations.

95.     No emergency necessitated these calls.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES

## AS A RESULT OF THE CALLS

96.     Defendants WEISBERG and NATIONAL's calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

97.     Defendants WEISBERG and NATIONAL's calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

98.     Defendants WEISBERG and NATIONAL's calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

99.     Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of Plaintiff's cell phone.

## PLAINTIFF'S CELL PHONE IS A RESIDENTIAL NUMBER

**100.**    The calls were to Plaintiff's cellular phone number 407-577-3822 which is Plaintiff's personal cell phone that he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and has not done so for at least 15 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phones registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

## CAUSES OF ACTION:

## COUNT ONE:

**Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing Without Prior Express Written Consent**
**(Against All Defendants)**

**101.**    Plaintiff re-alleges and re-adopts paragraphs 1 through 100 of the Complaint as if fully set forth herein.

**102.**    Defendants WEISBERG and NATIONAL and/or their affiliates or agents violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), at least forty-three (43) times by placing non-emergency telemarketing automated prerecorded messaged calls to Plaintiff's cellular telephone number without prior express written consent.

**103.**    Plaintiff was statutorily damaged at least forty-three (43) times under 47 U.S.C. § 227(b)(3)(B) by Defendants by the calls described above, in the amount of $500.00 per call.

**104.**    Plaintiff was further statutorily damaged because Defendants WEISBERG and

NATIONAL willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount to $1,500.00 as permitted under U.S.C. § 227(b)(3)(C) for each and every willful and/or knowing violation.

105.    Plaintiff is also entitled to and does seek an injunction prohibiting Defendants WEISBERG and NATIONAL and their employees, affiliates, and agents from violating the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by placing non-emergency telemarketing automated prerecorded messaged calls to any cellular telephone number using an ATDS without prior express written consent.

## COUNT TWO:

### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))

### (Against All Defendants)

106.    Plaintiff re-alleges and re-adopts paragraphs 1 through 100 of the Complaint as if fully set forth herein.

107.    Defendants WEISBERG and NATIONAL called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the seventeenth (17th) call for the purposes of commercial solicitation, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

108.    Plaintiff was statutorily damaged at least thirty-eight (38) times under 47 U.S.C. § 227(c)(3)(F) by Defendants WEISBERG AND NATIONAL by the telemarketing automated prerecorded message calls described above, in the amount of $500.00 per call.

109.    Plaintiff was further statutorily damaged because Defendants WEISBERG and

NATIONAL willfully and/ or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful and/or knowing violation.

110.    Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).


## COUNT THREE:

### Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)

### (Against All Defendants)

111.    Plaintiff re-alleges and re-adopts paragraphs 1 through 100 of the Complaint as if fully set forth herein.

112.    The foregoing acts and omissions of Defendants WEISBERG and NATIONAL and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking the following:

a.    A written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1)[2]

b.    Training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2)[3]; and,

c.    In the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. §

---

[2] *Seeid.* at 425 (codifying a June 26, 2003 FCC order).
[3] *Seeid.* at 425 (codifying a June 26, 2003 FCC order).

64.1200(d)(4).[4]

113.    Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

114.    Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

## COUNT FOUR

### (Violations of Florida Statutes § 501.059)

### (Against All Defendants)

115.     Plaintiff re-alleges and re-adopts paragraphs 1 through 100 of the Complaint as if fully set forth herein.

116.    Defendants WEISBERG and NATIONAL and/or their affiliates and authorized representatives called Plaintiff using automated means without Plaintiff's express written consent. Fla. Stat. § 501.059(8)(a).

117.    Defendants WEISBERG and NATIONAL did not have Plaintiff's prior express written consent when making the telephonic solicitation calls. Fla. Stat. § 501.059(1)(g).

118.    Plaintiff is entitled to an award of at least $500 in damages for each such violation of Fla. Stat. § 501.059(8)a) pursuant to Fla. Stat. § 501.059(10)(a)(2).

119.    Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. Fla. Stat. § 501.059(10)(a)(b).

---

[4] *Seeid.* at 425 (codifying a June 26, 2003 FCC order).

## COUNT FIVE

### (Violations of Florida TELEMARKETING ACT)

### (Against All Defendants)

**120.**     Plaintiff re-alleges and re-adopts paragraphs 1 through 100 of this Complaint as if fully set forth herein.

**121.**     Defendants WEISBERG and NATIONAL called Plaintiff more than three times within a 24-hour period. Fla. Stat. 501.616(6)(b).

**122.**     Defendant WEISBERG and NATIONAL and/or their affiliates and authorized representatives called Plaintiff using automated dialing equipment that intentionally transmitted false caller identification information. Fla. Stat. 501.616(7)(b).

**123.**     In addition to any other penalties or remedies provided under law, a person who is injured by a violation of the provisions of this part may bring a civil action for recovery of actual damages and/or penalties and/or punitive damages, including costs, court costs, attorney's fees. No provision of this part shall be construed to limit any right or remedy provided under law. Fla. Stat. 501.625.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Joshua Cacho prays for judgment against Defendants as follows:

A.     Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.     A declaration that actions complained of herein by Defendants violates the TCPA and Fla. Stat. 501.059 and Florida Telemarketing Act;

C.     An award of $1500 per call in statutory damages arising from the TCPA 54 U.S.C§227(b) intentional violations jointly and severally against the corporations for 43 calls.

D.     An award of $1500 per call in statutory damages arising from the TCPA 47 U.S.C §227(c) intentional violations jointly and severally against the corporations for 38 calls.

E.     An award of $1500 per call in statutory damages arising from the TCPA 47 U.S.C § 227(c)(5) intentional violations jointly and severally against the corporations for 54 calls.

F.     An award of $1,500 per call in statutory damages arising from 501.059(8)(a) intentional violations, pursuant to Fla. Stat. § 501.059(10)(a)(b) for 54 calls.

G.     An award of $50,000 in punitive damages arising from intentional violations of Fla. Stat. 501.616(6)(b)

H.     An award of $50,000 in punitive damages arising from intentional violations of Fla. Stat. 501.616(7)(b).

I.     An award to Plaintiff of interest, costs, and attorneys' fees, as allowed by law and equity.

J.     Such further relief as the Court deems necessary, just, and proper.

## JURY
## DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

June 13, 2023,                          Respectfully

Joshua Cacho
Plaintiff, Pro Se
164 Estella Rd
Lake Mary, Florida
407-577-3822